**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **WESLEY A. MASSEY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Case No. 2:19-cv-659-SPB** |
| | ) | |
| **LEE ESTOCK, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION**

## I.   Introduction

The instant civil rights action is brought by *pro se* Plaintiff Wesley A. Massey, an inmate at the State Correctional Institution at Pine Grove.  In his complaint, Massey sets forth a single claim under 42 U.S.C. §1983 against the following corrections officials in both their individual and official capacities:  Lee Estock, Superintendent of SCI-Pine Grove ("Estock"); Dan Yingling, Unit Manager for the "H-Unit" ("Yingling"); Robert Behr, Unit Manager for the "GB-Unit" ("Behr"); Susan Bergey, allegedly the Medical Director for SCI Pine Grove ("Bergey"), and Counselor Mottin ("Mottin"). His §1983 claim is based on the theory that the institution's handling of disposable razors is unsanitary and violates his Eighth Amendment rights under the United States Constitution.

## II.   Background

In May 2018, while housed in the "H Unit" of SCI-Pine Grove, Plaintiff discovered that inmates' razors were being stored "in a communal box, on porous sheets with drilled holes in which each razor [was] placed by cell."  Compl., ECF No. 12, ¶10.  Each inmate's name and cell number was written on the back of the razor handle in black marker.  *Id.* According to the

complaint, the identifiers would "easily" rub off "after one or two uses." *Id.*  In addition, the porous board that holds the razors were "covered with smeared blood, and hair." *Id.* ¶11.

Plaintiff expressed concern to the housing unit officer about his fear of contracting an infectious disease and was allegedly informed that, "in theory, the boxes [were] supposed to be cleaned weekly, but had not been cleaned in several months." Compl. ¶11.  Plaintiff then tried to discuss his concerns with Yingling and inquired whether "medical" would consider it "sanitary." Compl. ¶12.  Plaintiff was told by Yingling that "this is the policy" and Plaintiff "certainly was not the first individual to complain and its [sic] not going to [be] changed." *Id.*  Plaintiff claims he "expressed the dangers of contracting an infectious disease from blood bourne pathogens," but Yingling stated "he was well aware of the risk and he was not going to change [the policy] as it was approved by medical." *Id.*  Unsatisfied, Plaintiff filed a grievance.  *Id.*

"Shortly thereafter," Plaintiff moved to the institution's "GB-Unit," where he observed that razors were being stored in the same manner as on the "H Unit." Compl. ¶13.  On one occasion when Superintendent Estock was visiting the housing unit, Plaintiff attempted to speak with Estock about the razor storage policy, prompting Estock to respond that "it is not going to be changed." *Id.*  Plaintiff inquired why "an arbitrary policy [was] being enforced here that puts inmates at risk for getting things like Hepatitis and HIV[,]" while inmates at the other state correctional institutions are "allowed to store and keep their razor and be responsible for [their] cleaness [sic]."  Estock then allegedly became irate and told Plaintiff that, if he didn't like it, he could "wait [his] two years and transfer," that he "did not care." *Id.*

Following this exchange, Plaintiff filed another grievance about the storage policy and sent a copy of his grievance to Bergey, "expressing concern for the risk of harm."  Compl. ¶14; Compl. Exs. B and C.  Plaintiff also spoke about his concerns to Mottin and Behr during their

Case 2:19-cv-00659-SPB   Document 60   Filed 04/22/20   Page 3 of 11

visit to his housing unit.  Compl. ¶15.  Plaintiff informed them that the storage box was not being cleaned in accordance with internal prison policy.  *Id.* According to the complaint, both officers told Plaintiff there was nothing they could do about the policy and it would not change.  *Id.*

Plaintiff avers that, several months later, after receiving responses for his initial grievance, he "sent a formal NOTICE, to show the defendants their malfeasance and their deliberate indifference, their failure to act as well as their failure to protect [him] from infectious disease and any blood bourne pathogens."  Compl. ¶16; Compl. Ex. D.

## III.   <u>Discussion</u>

Based upon the foregoing alleged events, Plaintiff commenced this civil action, claiming that each of the named Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment.  As relief, Plaintiff seeks compensatory and punitive damages, as well as declaratory relief and an injunction "ordering Defendant's [sic] Lee Estock *et al*. to stop enforcing the current razor policy that puts inmates at risk of contracting infectious maladies." Compl. ¶22.

Plaintiff's claim is asserted under 42 U.S.C. §1983, which affords him a private right of relief if he can show that the Defendants, while acting under color of state law, violated one or more of his federal constitutional or statutory rights.  *See West v. Atkins*, 487 U.S. 42, 48 (1988). To hold the Defendants personally liable under §1983, Plaintiff must demonstrate each Defendant's personal involvement in the alleged wrongdoing.  *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

On December 9, 2019, Defendants filed a motion to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1]  ECF Nos. 26 and 27.  In their motion, Defendants argue that Plaintiff failed to state a §1983 claim upon which relief can be granted, because he has not alleged facts to support an Eighth Amendment violation, and because he has not alleged the personal involvement of some or all of the named Defendants in the alleged misconduct.

In relevant part, the Eighth Amendment prohibits the infliction of "cruel and unusual punishments" upon convicted prisoners.  *See* U.S. Const. amend VIII.  "Because the prohibition is directed only toward punishment,[ ] it applies only to deprivations that constitute an unnecessary and wanton infliction of pain,[ ] including those that are totally without penological justification.[ ]"  *Mammana v. Federal Bureau of Prisons*, 934 F.3d 368, 372 (3d Cir. 2019) (emphasis in the original; internal footnotes, citations and quotation marks omitted).

To make out an Eighth Amendment violation, a plaintiff must meet two requirements. First, he must establish a sufficiently serious deprivation, one that involves, from an objective standpoint, a denial of "the minimal civilized measure of life's necessities." *Thomas v. Tice*, No. 18-1811, 2019 WL 5884162, at *2 (3d Cir. Nov. 12, 2019).  This requirement is met if the

---

[1] When considering a Rule 12(b)(6) motion, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  *Wayne Land & Mineral Grp. LLC v. Delaware River Basin Comm'n*, 894 F.3d 509, 526–27 (3d Cir. 2018) (internal quotation marks and citations omitted).  In order to survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Plausibility means "more than a sheer possibility that a defendant has acted unlawfully." *Id*.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556).

plaintiff shows he was incarcerated under conditions posing "a substantial risk of serious harm." *Mammana*, 934 F.3d at 373 (citation and internal quotation marks omitted). Second, a plaintiff must show that the defendants acted with deliberate indifference to his health or safety or to the conditions of confinement that violated his constitutional rights. *Id.*; *Thomas*, 2019 WL 5884162, at *2. This second factor involves a subjective standard whereby the relevant officials actually knew of and disregarded the unconstitutional condition. *Id.*

In moving to dismiss the complaint, Defendants assert that no facts have been pled that would show Plaintiff was subjected to cruel and unusual punishment by virtue of the institution's razor storage policy. Defendants argue that, while Plaintiff "speculates that he may be susceptible to infectious diseases, including HIV and Hepatitis, because of how the razors are stored and handled, . . . he has failed to allege that he or any other inmate at his facility has been contaminated by the policy . . . [which has] been in effect for ten or so years." ECF No. 27 at 6. Defendants maintain that Plaintiff's "unfounded and unverified speculations do not state a claim under the Eighth Amendment." *Id.; see O'Brien v. Butler Cty. Prison,* 2013 U.S. Dist. LEXIS 105020 at 13-14 (W.D. Pa. June 24, 2013) (recommending that an Eighth Amendment claim be dismissed where plaintiff alleged that razors were "kept in the open for days, and in close proximity to other inmates' razors," thereby subjecting plaintiff "to the threat of various kinds of bacterial infection"), *report and recommendation adopted,* 2013 U.S. Dist. LEXIS 104046 (W.D. Pa. July 25, 2013). Defendants note that there are no allegations in the complaint that Plaintiff's razor was ever mixed up with another inmate's razor "or that the mix-up resulted in his contamination with an infectious disease." ECF No. 27 at 7.

As discussed, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat*

*superior*." *Rode,* 845 F.2d at 1207.  The requisite personal involvement can be shown through allegations of the defendant's direct participation in the alleged misconduct, his/ her personal direction to others, or his/her actual knowledge of the misconduct and acquiescence therein, provided such allegations are made with the "appropriate particularity." *Id.*  As to this point, Defendants assert that Plaintiff has failed to allege personal involvement on the part of some or all of them.  With respect to Estock, Yingling, Behr, Bergey and Mottin, Defendants maintain that Plaintiff allegedly made complaints to each of these individuals, but he did not aver that any of them were responsible for creating or implementing the storage policy.  Defendants further argue, with respect to Yingling and Bergey, that their personal involvement cannot be predicated upon their mere involvement in a post-hoc administrative grievance process.  *See Simonton v. Tennis*, 437 F. App'x 60, 62 (3d Cir. 2011); *Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006).  "Access to prison grievance procedures is not a constitutionally-mandated right, and allegations of improprieties in the handling of grievances do not state a cognizable claim under [section] 1983." *Glenn v. DelBalso*, 599 F. App'x 457, 459 (3d Cir. 2015).

Finally, to the extent Yingling is alleged to have stated that the institution's medical department approved of the razor storage policy, Defendants contend that deliberate indifference cannot be shown through Yingling's reliance on the professional judgment of health care providers.  *See Durmer v. O'Carroll,* 991 F.2d 64, 69 (3d Cir. 1993) (holding that prison administrators cannot be deliberately indifferent "simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor").

As noted, Defendants' motion to dismiss was filed on December 9, 2019.  Plaintiff's initial deadline for responding to the motion was December 30, 2019.  *See* ECF No. 31.  Upon Plaintiff's request, the deadline was extended to February 27, 2020.  *See* ECF Nos. 37, 40.  After

Plaintiff requested a second extension, the Court again acceded and directed him to file his response on or before April 3, 2020.  *See* ECF Nos. 52, 54.  Still, Plaintiff has not, to date, responded to Defendants' motion to dismiss.  As one court has observed, "plaintiffs who fail to brief their opposition to portions of motions to dismiss do so at the risk of having those parts of the motions to dismiss granted as uncontested."  *Lada v. Delaware Cty. Community College*, Civil Action No. 08–cv–4754, 2009 WL 3217183, at *10 (E.D. Pa. Sept. 30, 2009).  Because Plaintiff has not responded to the pending motion to dismiss, despite having been given ample opportunity to do so, the Court deems the contested claims abandoned.  *See, e.g., Lawson v. Barger*, No. 1:17-cv-97, 2018 WL 6524382, at *3 (W.D. Pa. Oct. 12, 2018) (plaintiff's failure to address arguments raised in a motion to dismiss warranted inference that plaintiff had abandoned those claims), *report and recommendation adopted,* 2018 WL 6523179, at *1 (W.D. Pa. Dec. 12, 2018); *Tambasco v. United States Dept. of Army*, No. 3:17-CV-1857, 2018 WL 1203466, at *2 (M.D. Pa. Mar. 8, 2018) (dismissing claims as unopposed when the plaintiff failed to respond to arguments made by the defendants in support of their motion to dismiss); *Lada*, 2009 WL 3217183, at *10 (same).  Such an inference is particularly justified in this case, because Plaintiff has, on at least one prior occasion, suffered the dismissal of claims that he failed to defend.  *See Massey v. Holman,* No. 1:17-CV-292, 2019 WL 3997845, at *6 (W.D. Pa. July 23, 2019), *report and recommendation adopted*, No. CV 17-292, 2019 WL 3997280 (W.D. Pa. Aug. 23, 2019).

   Although not specifically addressed by the Defendants, the Court notes that Plaintiff has also asserted claims against the Defendants in their official capacities.  Because Plaintiff is proceeding *in forma pauperis,* this Court has an independent obligation under 28 U.S.C. §1915(e) to consider the sufficiency of those claims.  *See id*. §1915(e)(2)(B).  To that end, the Court concludes that Plaintiff's official capacity claims for compensatory damages are barred by

the Eleventh Amendment and must therefore be dismissed for lack of subject matter jurisdiction. *See Will v. Michigan Dep't of State Police,* 491 U.S. 58, 66, (1989); *Kentucky v. Graham,* 473 U.S. 159, 169 (1985); *Lyter v. Pennsylvania State Police,* No. CV 19-664, 2019 WL 3063529, at *4 (E.D. Pa. July 11, 2019).

While the Eleventh Amendment does not bar official capacity claims against state officers for prospective injunctive relief, the "remedies are limited to those that are 'designed to end a *continuing violation of federal law*.'" *Christ the King Manor, Inc. v. Sec'y U.S. Dep't of Health & Human Servs.*, 730 F.3d 291, 318 (3d Cir. 2013) (emphasis added) (quoting *Green v. Mansour*, 474 U.S. 64, 68 (1985)).  In this case, SCI-Pine Grove recently changed the razor storage policy that gave rise to this suit.  On January 30, 2020, Defendants filed a status report confirming that the institution had adopted and implemented a new local policy, pursuant to which razors are now stored in individualized plastic containers.  *See* ECF No. 40.

Since the original storage policy is no longer "continuing," the question arises whether *any* "continuing violation of federal law" is extant that could be appropriately remedied through prospective injunctive relief.  During the preliminary injunction proceedings, Plaintiff suggested that the newly implemented razor storage policy would be constitutionally inadequate because the identification markings on the razors can rub off, thereby presenting the danger that razors will get placed in the wrong containers and distributed to the wrong inmates.  The only constitutionally adequate solution, Plaintiff insisted, was for inmates to retain possession of their own personal razors within their cells, as is the custom among all general population inmates in the other state correctional institutions.

The Court rejected this argument and found that, for purposes of obtaining preliminary injunctive relief, Plaintiff had failed to demonstrate a likelihood of irreparable harm relative to the new razor storage policy.  As the undersigned explained:

> The uncontradicted evidence of record establishes that inmate names and numbers are written on each razor handle with permanent marker which, by its nature, is designed to be resistant to smudges and smears. The Court's review of the photographic evidence confirmed that the labels on the individual razor handles were legible. To the extent that the labeling may inevitably wear off or smudge over time, the problem can quickly and easily be remedied by simply relabeling the razor handles. Given these facts -- and considering the institution's system for distributing and collecting razors on an orderly individualized basis, the Court finds that Plaintiff's likelihood of contracting an infectious disease from another inmate's razor is too remote to support an award of injunctive relief.

ECF No. 28 at 4-5.

The Court further found that Plaintiff had not demonstrated a reasonable likelihood of success insofar as his Eighth Amendment claim insofar as it related to the new storage policy. The Court explained:

> . . . Plaintiff's concerns about contracting infectious diseases in the future are speculative at best. Thus, Plaintiff is unlikely to be able to prove that Defendants were deliberately indifferent to a substantial risk of serious harm. Nor is it reasonably likely that Plaintiff will be able to show that the institution's newly adopted razor storage policy lacks any penological justification. Although Plaintiff believes that every inmate in general population should be able to keep a razor in his cell, the Defendants presented persuasive evidence that SCI-Pine Grove adopted a contrary policy because of past incidents of violence and because it typically houses a younger population. The Court credits the Defendants' testimony in this regard.

ECF No. 28 at 6.

Because the matter was before the Court on Plaintiff's motion for a preliminary injunction, the Court did not render any conclusions about the ultimate merits of Plaintiff's claims.  To the extent it is appropriate to do so now, however, the Court finds that Plaintiff cannot state a plausible on-going Eighth Amendment violation predicated on any of the

arguments or theories he has articulated to date.  Given the considerations previously discussed

by this Court, Plaintiff cannot plausibly allege that the Defendants – or any officials at SCI-Pine

Grove -- are exhibiting "deliberate indifference" to a "substantial risk of serious harm" to the

extent they are implementing the newly adopted razor storage policy, as it is written.

Accordingly, Plaintiff's claims for prospective injunctive relief will be dismissed.  In addition,

the Court will dismiss Plaintiff's request for declaratory relief, which is "'by definition

prospective in nature,' *CMR D.N. Corp. v. City of Philadelphia*, 703 F.3d 612, 628 (3d Cir.

2013), and cannot be issued to address past wrongs." *Parkell v. Senato*, 704 F. App'x 122, 125

(3d Cir. 2017).[2]

## IV.   __Amendment__

Before dismissing a complaint for failure to state a claim upon which relief may be

granted, the Court must grant a plaintiff leave to amend his complaint unless amendment would

be inequitable or futile.  *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3rd Cir. 2002).

In this case, the Court finds that further amendment would be futile because the original policy

that gave rise to this lawsuit has been prospectively changed and, in any event, Plaintiff did not

defend his claims against the Defendants as they relate to the original policy.  Further, the Court

finds that any Eighth Amendment claim predicated upon SCI-Pine Grove's newly implemented

razor storage policy, as written, would be futile because such claim would not withstand a

motion to dismiss.

---

[2] During the course of these proceedings, Plaintiff filed two motions, which currently remain pending -- specifically, a motion for class certification, ECF No. 23, to which Defendants replied on December 4, 2019, ECF No. 25, and a motion to preserve (alleged) videotape evidence, ECF No. 38, to which Defendants responded on January 23, 2020.  ECF No. 47.  In light of the Court's disposition of the pending motion to dismiss, the remaining motions will be dismissed as moot.

V.      **Conclusion**

Based upon the foregoing considerations, Defendants' motion to dismiss the complaint

will be granted.  In addition, the Court will dismiss the Plaintiff's official capacity claims,

consistent with the authority granted under 28 U.S.C. §1915.

An appropriate order follows.


_Susan Paradise Baxter_
SUSAN PARADISE BAXTER
United States District Judge

Cm:    Wesley A. Massey
       ND-8176
       SCI Pinegrove
       189 Fyock Road
       Indiana, PA 15701
       (via U.S. Mail, First Class)

       Counsel of record
       (via CM/ECF)